# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JESUS I. FLORES,

                     Petitioner,

   v.

W.A. GITTERE,[1] et al.,

                  Respondents.

Case No. 2:14-cv-01629-GMN-VCF

**ORDER**

## I.    Summary

This matter is before the Court on the merits of the remaining grounds[2] in Petitioner Jesus I. Flores's petition for writ of habeas corpus brought under 28 U.S.C. § 2254 ("Petition" (ECF No. 71)). A Nevada jury convicted Flores of five charges: (1) burglary while in possession of a firearm; (2) robbery with use of a deadly weapon, victim 60 years of age or older; (3) first-degree kidnapping with use of a deadly weapon, victim 60 years of age or older; (4) battery with use of a deadly weapon, victim 60 years of age or older; and (5) conspiracy to commit robbery. Flores was sentenced to an aggregate of 216 months to life imprisonment. (ECF No. 14-8.)

The Petition alleges, among other things, the trial court's denial of a motion for mistrial due to the mid-trial severance of the codefendants violated his rights to due process and a fair trial, and trial counsel provided ineffective assistance by conceding Flores's guilt for conspiracy to commit robbery, robbery, and burglary, the victim enhancements, and facts supporting the remaining charges and weapon enhancements. For the reasons discussed below, the Court will deny the Petition and issue a certificate of appealability for Grounds II(A), II(B), II(C) and II(F).

---

[1] According to the state corrections department's inmate locator page, Flores is incarcerated at Ely State Prison ("ESP"). The ESP website reflects W.A. Gittere is the warden for that facility. *See* Ely State Prison Facility | Nevada Department of Corrections (nv.gov). The Court will therefore direct the clerk of the court to substitute W.A. Gittere for Respondent Brian E. Williams, Sr., under, *inter alia,* Fed. R. Civ. P. 25(d).

[2] Ground 2(E) of the Petition was dismissed as unexhausted and procedurally defaulted and Grounds III, IV, and V of the Petition were dismissed as untimely. (ECF Nos. 52; 103.)

## II.    Background[3]

### A.    Facts Underlying the Offenses

Greg Bestor testified he was 61 years old and lived with his two dogs in a single-story house in Las Vegas, Nevada, on April 29, 2009. He awoke around 1:00 a.m., to find a stranger, Alaberto Javier Martinez, standing at the foot of his bed. Bestor turned on a lamp and donned his glasses. Martinez, while holding "a gun," said, "[W]e want $1000" to pay rent. Bestor said Flores and John David Rodriguez, also strangers to Bestor, joined Martinez at the foot of the bed. Bestor said Flores had a knife and also demanded rent money but never pointed a gun or knife at him. Bestor told the men he had $100, and Flores located Bestor's money clip and said, "There's only 60 bucks here." Bestor told the men he withdrew $100 from an automated teller machine ("ATM") but spent part of it on dinner with his housepainter. While Martinez pointed the gun at Bestor, Flores told him, "[W]ell this is not enough money," and demanded Bestor's personal identification numbers ("PIN") for Bestor's debit cards, which Flores found in Bestor's money clip, and Bestor provided Flores with correct PINS. Flores and Rodriguez left the room while Martinez remained with "the gun pointed" at him. Bestor said Rodriguez remained in the house and later returned to the bedroom with a hammer raised over his head, and told Bestor, "[W]e're serious" and "I can really hurt you." (ECF Nos. 12-1 at 45–47; 12-2 at 10–11, 25; 113-6 at 44–59.)

Bestor testified Flores returned 30 to 45 minutes later and threw the ATM cards and receipts on Bestor's bed, stating, "[Y]ou gave me the wrong numbers. Your cards don't work. I couldn't get anything." Bestor said Flores "was able to drain one card and he threw it back on the bed" and then Bestor told Flores, "I got the money in the bank. I gave you the right numbers." Flores decided to take Bestor to the ATM machine. Before leaving, Bestor saw Martinez give the firearm to Flores and Flores give a knife to Martinez. Bestor did not know what Flores did with the firearm and did not see it after the exchange. Bestor said Flores and Rodriguez were in front of him, and Martinez was right behind him holding the knife with the blade "out," as the foursome

---

[3] The Court makes no credibility findings or factual findings regarding the truth or falsity of the evidence presented in the state courts. The Court's background summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence or category of evidence does not signify the Court overlooked the evidence in considering the claims.

walked out to Bestor's vehicle. Bestor feared for his life, did not want to go, and did not want to give them his money. Bestor admitted his testimony about the exchange of weapons was new and he did not mention it during his 911 call, his interview with detectives, or his preliminary hearing testimony.[4] (ECF Nos. 12-1 at 19, 49–51, 59, 64–75; 12-2 at 2–8, 24–26; 113-6 at 59–61.)

Bestor testified Flores entered the driver's seat of Bestor's car, Rodriguez sat in the front passenger seat, and "they made" Bestor sit in the backseat behind Flores next to Martinez who held the knife. Flores drove them to a drive-through ATM where Bestor entered his ATM card and the correct PIN (the same PIN he earlier gave to Flores); however, the ATM rejected the request. At trial, Bestor identified corresponding bank surveillance video. Bestor told the men he had funds in the account and did not know why it did not work. Martinez told Bestor they were serious and needed money, and then stabbed Bestor with the knife. Bestor saw Rodriguez remove from Bestor's vehicle a tape recorder, roll of quarters, and credit and shopping reward cards wrapped in a rubber band. (ECF Nos. 12-1 at 24–25, 30–32; 113-6 at 60–65.)

Bestor testified they returned to his bedroom where Martinez held the knife while Flores used wires he ripped out of the wall behind Bestor's television to tie Bestor's arms and waist to a chair. Flores placed a bandana from Bestor's closet inside his mouth, told Bestor, "Now you got my DNA," threaded the bandana through Bestor's mouth, and then tied it at the back of Bestor's head. Flores then tied one of Bestor's neckties around Bestor's eyes. Flores told Bestor to wait for his housepainter to untie him later that morning. Bestor said Flores smiled as he removed Bestor's high-definition television. Holding Bestor's driver's license, Flores said, "[W]e know where you live" and threatened to "get" Bestor if he called police. Bestor waited "five, ten minutes," after the men left, wiggled out of the ties, cut himself free from the chair, and called 911. Among other things, the men took Bestor's driver's license, computer, jacket, and fake money advertising the El Rancho Hotel. (ECF Nos. 12-1 at 2, 7–11, 16–19, 24–27, 34–37, 54; 113-6 at 65–66.)

Las Vegas Metropolitan Police Department ("Metro") detective Samuel T. Smith responded to the 911 call. Meanwhile, Metro officer Marcin Zemsta stopped Flores, Martinez, and

---

[4] At the preliminary hearing, Bestor testified Martinez had a firearm and knife, was taken to the car at knifepoint, and did not know what happened to the firearm. (ECF No. 113-1 at 3–4, 10–11.)

Rodriguez, for jaywalking. Zemsta found Bestor's driver's license and cards on the ground 6 to 8 feet from the men. Zemsta learned a robbery had just occurred at Bestor's address, and based on the suspects' descriptions, contacted the investigating officers. About 15 to 20 minutes after police responded to Bestor's 911 call, they took Bestor to view Zemsta's suspects, and Bestor identified Flores, Martinez, and Rodriguez as the perpetrators. Bestor identified his jacket, worn by Flores, which contained the fake EL Rancho money, and recognized Flores's tattoos. Among other things, police recovered: (1) Bestor's jacket and the fake El Rancho money from Flores; (2) Bestor's shopping reward cards, wrapped in a rubber band, from Rodriguez; and (3) a "small yellow knife," with a one-to-two-inch blade, from Martinez. Flores's sweatshirt, worn in video surveillance at the Bank of America ATM, was also impounded. Rodriguez's father gave Bestor's computer to Smith. Bestor told Smith that Martinez had the firearm and knife, but he was unsure whether Martinez "handed the gun off to somebody." Smith saw no cuts or blood on Bestor's shirt, obtained no search warrants for the residences of Flores, Martinez, or Rodriguez, and recovered no firearm during the investigation. Metro forensic scientist Kristina Paulette found Flores's DNA profile on Bestor's bandana. (ECF Nos. 12-1 at 27–28, 56–62; 12-2 at 27–46; 13-2 at 47–48, 53–54, 58–60; 13-3 at 6, 9; 13-7 at 34–68; 113-8 at 13, 38–40, 44–55.)

Wells Fargo vice president of corporate security Chris Gandy identified activity records, and surveillance videos and photographs, depicting attempts to access Bestor's account on the night of the offenses. Among other attempts, a balance inquiry was made at a Bank of America branch in Las Vegas, Nevada, at 12:47:16 a.m., followed by a withdrawal request for $600. That withdrawal was unauthorized as beyond the $300 limit. A request to withdraw $400 was likewise denied. Attempts to access Bestor's account were made that night at a 7-11 store and a Chevron gas station. Gandy identified bank surveillance video and photographs depicting attempts to access Bestor's account at Wells Fargo ATM locations beginning at 1:02:23 a.m., and later at 2:22:06 a.m. Gandy confirmed the account was frozen after a certain number of attempts, and ultimately, no money was taken from Bestor's Wells Fargo account. (ECF No. 113-8 at 3–37.)

**B.    Procedural Background**

Flores, Martinez, and Rodriguez were charged by information with five counts, including

enhancements: (1) burglary while in possession of a firearm; (2) robbery with use of a deadly weapon, victim 60 years of age or older; (3) first-degree kidnapping with use of a deadly weapon, victim 60 years of age or older; (4) battery with use of a deadly weapon, victim 60 years of age or older; and (5) conspiracy to commit robbery. The State alleged each codefendant was liable for the four non-conspiracy charges in counts (1) to (4) based on three alternative theories of liability: (1) by directly committing the crime, and/or (2) by aiding or abetting in the commission of the crime, with the intent that the crime be committed, by providing counsel and/or encouragement and by entering into a course of conduct whereby all defendants entered together to commit the crime and all defendants acted as lookouts for each other, and/or (3) pursuant to a conspiracy to commit the crime. The State furthermore alleged each defendant was liable because Martinez possessed the firearm during the burglary, Martinez used the firearm and/or the knife to rob and kidnap Bestor, and Martinez stabbed Bestor. For Flores, the State also filed a notice of habitual criminal under NRS § 207.010, alleging four prior felony convictions. The state district court denied Flores's pretrial motion to dismiss the first-degree kidnapping charge as incidental to and in furtherance of the ongoing robbery and crimes. (ECF Nos. 10-10; 10-15 at 3–4, 13; 11-2.)

A joint trial commenced in June of 2010. Flores did not anticipate calling any witnesses during the trial. Before opening remarks to the jury, Martinez and Rodriguez stated they conceded no charges. Flores's counsel stated Flores would concede "the burglary charge and the robbery charge and the conspiracy to commit robbery charge" and "the victim over 60[-]enhancement," but not "use." The trial court canvassed Flores about the concession strategy:

> THE COURT: Okay. And sir, you understand that by your attorneys conceding guilt on some of the charges, that relieves the State of the burden of having to prove those charges?
>
> DEFENDANT FLORES: Yes, ma'am.
>
> THE COURT: You understand that? So you're giving up some of your constitutional rights with respect to your defense of those charges?
>
> DEFENDANT FLORES: Yes, ma'am.
>
> THE COURT: Do you understand—have you had an opportunity to discuss that decision with your attorneys?
>
> DEFENDANT FLORES: Yes, I have, Your Honor.

THE COURT: And do you understand—do you feel that you understand the strategy behind that decision?

DEFENDANT FLORES: Yes, I do.

THE COURT: [D]o you want to make a record on your . . . process for . . . conceding?

DEFENSE COUNSEL: I'd be happy to, Judge. Regarding our thought process on the concessions, we believe that—we have already discussed with Mr. Flores that it would be difficult at best to prevent [sic] a credible defense to the charges of burglary, robbery and conspiracy to commit robbery. And so strategically, to maintain credibility and to strengthen our defense against the other charges, we have decided to concede.

THE COURT: Okay. So you understand that?

DEFENDANT FLORES: Yes, ma'am.

THE COURT: And you feel comfortable doing that?

DEFENDANT FLORES: Yes, Your Honor.

THE COURT: Do you have any questions you want to ask your lawyers or you want to ask me about that?

DEFENDANT FLORES: No, thank you.

THE COURT: Okay. Thank you, sir.

(ECF No. 113-6 at 5–7.)

In opening remarks to the jury, Flores's counsel urged the jury to "hold [Flores] responsible for only what the State will be able to prove, burglary, robbery, and conspiracy to commit robbery," and stated Flores "conspired with" Martinez and Rodriguez to rob Bestor, Martinez "had a gun," "Martinez had a knife pointed at Bestor," and "Martinez stabbed Bestor":

[DEFENSE COUNSEL]: Ladies and gentlemen, Jesus Flores made a terrible mistake. He wants you to know this. And I hesitate to even call it a mistake because it was so much more than that. Jesus Flores victimized Gregory Bestor. And he stands before you today . . . prepared to accept responsibility. He accepts responsibility for what he did. He burglarized Gregory Bestor's home. And he robbed Gregory Bestor of his personal property. And he conspired to rob Gregory Bestor with his two co-Defendants, Mr. Martinez and Mr. Rodriguez.

But the State is charging Jesus with crimes he did not commit. The State alleges that he committed the burglary and robbery while in possession of a gun or a knife. The facts will not support this. And the State alleges that he committed first degree kidnapping. The facts will not support this. And the State alleges that he committed battery with a deadly weapon. And again, the facts will not support this.

The facts are going to be difficult to listen to. But we ask you to listen

carefully. Now, what are you going to hear during this trial? You are going to hear that Jesus, Martinez and Rodriguez burglarized and robbed Gregory Bestor. They went into his house together in the middle of the night. Martinez had a gun. They went into the house and Jesus asked Gregory for money. And then he said, you know, but I'm sorry.

Jesus took Gregory's ATM card with his PIN number and left the house. Martinez and Rodriguez, they stayed behind in Gregory's house. Gregory's house ends up ransacked. Every room has been gone through, all of the closets, all of the property. During this time, Martinez and Rodriguez, you're going to hear, are threatening Gregory.

About 45 minutes later, Jesus comes back to the house. He tells Gregory that the ATM card isn't working. And Gregory says to him, "take me with you. I'll get the money for you." And they all four get into Gregory's car. And if you remember the State's diagram, Jesus is the driver. He walks out and gets in. Rodriguez is sitting next to him in the front seat. Gregory, the victim, he's sitting behind Jesus. And next to him is Martinez. And Martinez has a knife pointed at Gregory in the backseat.

And they go to the ATM, and the ATM card doesn't work. And Martinez just all of a sudden stabs Gregory and says, "we're serious." Jesus then drives them back to Gregory's house, and Jesus ties Greg up. And he tells Greg, wait for the painter that's coming to your house this morning at 8:00. Greg had told him he was having some work done. The painter will un-tie you when he gets here at 8:00.

And they leave the house. They leave Gregory's bedroom door open. They leave through the front door and they leave that wide open. And they leave the house. And then the three get caught jaywalking on Freemont Street. Jesus has on Gregory's jacket and some El Rancho money. Martinez still has his knife. And Rodriguez has the rest of Gregory's property, his driver's license, his credit cards, his jewelry.

Ladies and gentlemen, Jesus accepts responsibility for what he has done. He asks you to listen carefully to these difficult facts and to hold him responsible for only what the State will be able to prove, burglary, robbery and conspiracy to commit robbery.

(*Id.* at 29–31.) The trial court granted motions to sever codefendants Martinez and Rodriguez based on Flores's "concession as to conspiracy" "that there was in fact an agreement," and trial proceeding against Flores. (*Id.* at 31–39, 43.)

Flores's counsel later objected to instructing the jury that "[e]ach member of a conspiracy is liable," contending there was only one conspiracy charge for robbery and there was no conspiracy allegation for the charges of first-degree kidnapping and battery with a deadly weapon. The State pointed out that Flores was charged with a conspiracy theory of liability for each of the four non-conspiracy charges. The trial court overruled the defense objection. Flores chose not to testify, and the defense called no witnesses. (ECF Nos. 13-2 at 4–5; 13-3 at 13–15.)

In closing remarks, Flores's counsel told the jury it could mark Flores "guilty" for burglary, robbery, and conspiracy to commit robbery because "the evidence shows verbal, non-verbal, however it might have been, these men acted together in concert to go into that house and commit that robbery." Counsel argued Flores, "from the beginning of this case has taken responsibility for those things . . . that he did." Counsel urged the jury to consider Flores's intent and knowledge in determining the remaining charges. For burglary while in possession of a firearm, counsel argued Bestor lacked credibility about the weapon exchange because he never before trial told anyone Flores possessed a firearm and there was no evidence Flores personally possessed any weapon. Counsel argued Bestor previously claimed only Martinez used a firearm and a knife. For battery with use of a deadly weapon, counsel argued there was no evidence Flores intended Martinez batter Bestor with the knife, that Flores knew Bestor was stabbed, and battery was not a natural and probable consequence of the crime because Flores was away at the ATMs when Rodriguez threatened Bestor with the hammer and therefore Flores was not on notice about "how heated that situation got" at Bestor's residence in Flores's absence. For first-degree kidnapping with use of a deadly weapon, counsel urged the jury not to "check off guilty," arguing the alleged kidnapping was incidental to and in furtherance of the robbery, and the movement of Bestor did not substantially increase the risk of harm over and above what was necessarily present for the robbery. (ECF No. 13-3 at 37–56.)

The jury found Flores guilty on all charges. At sentencing, the State moved to strike the habitual criminal allegations against Flores because "there was a confusion" over which prior convictions were appropriate. Flores's counsel explained the only plea offer Flores received before trial was to plead guilty to robbery with use of a deadly weapon and stipulate to large habitual criminal status, which carried a possible sentence of 20 years to life. Counsel argued such a plea would have been invalid because the presentence report shows Flores suffered only two prior felonies, making him eligible for only small habitual criminal status.[5] Counsel furthermore

---

[5] At the relevant time, Nevada's habitual criminal statute provided for a sentence of 5–20 years for a felony conviction as a small habitual criminal if the defendant had two prior felony convictions, and a sentence of 20 years to life for a felony conviction as a large habitual criminal if the defendant had three prior felony convictions. NRS § 207.010, *as enacted by* Laws 1997, p. 1184. According to the Presentence Investigative report, Flores suffered three

explained the State rejected Flores's offer to plead "to the sheet" without the life sentence for the kidnapping charge. Counsel said Flores went to trial because counsel "believed from a legal standpoint as his attorneys that we had a legitimate argument as to the first-degree kidnapping" and reminded the court that Flores conceded "most of the charges in opening" and "argued very little." Counsel requested a sentence of 11 to 28 years for first-degree kidnapping and concurrent sentences for the remaining charges. The court sentenced Flores to imprisonment for 18 years to life. (ECF Nos. 14-7 at 3–11; 14-8.) Flores unsuccessfully sought relief in state court on direct appeal and in postconviction proceedings. (ECF Nos. 14-8; 14-18; 14-43 at 3–13; 15-9.)

### III.    Legal Standards

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for consideration of the Petition:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable

---

prior felonies, but two were prosecuted in the same case and resulted in concurrent sentences. (ECF No. 88-1 at 5.) Where two or more convictions result from the same act, transaction, or occurrence, and are prosecuted in the same indictment or information, the convictions may be utilized only as a single prior conviction for purposes of Nevada's habitual criminal statute. *Halbower v. State*, 96 Nev. 210, 211–12, 606 P.2d 536, 537 (1980).

application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10, 412) (internal citation omitted).

The Supreme Court has instructed that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal citations omitted). A state court is not required to cite Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 357 U.S. 3, 8 (2002). The petitioner carries the burden of proof. *See Pinholster*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). Where there is no clearly established federal law, i.e., no holding from the Supreme Court, stating a particular standard or rule at the time of the state court's decision, then, by definition, a petitioner cannot establish under AEDPA that the state court's decision was either contrary to or an unreasonable application of clearly established federal law. *See, e.g., Carey v. Musladin*, 549 U.S. 70, 77 (2006).

## IV.    Discussion

### A.    Ground I—Denial of Motions for Mistrial and Continuance

Ground I alleges the trial court's denial of Flores's motion for mistrial and trial continuance, following severance of the codefendants, violated his rights to due process, an impartial jury, and a fair trial, under the Fifth, Sixth, and Fourteenth Amendments, because (A)

Flores was required to share peremptory challenges with his codefendants, and (B) the jury could have speculated about the reasons for the codefendants' absence at trial. (ECF No. 71 at 10–13.)

### 1.    Additional Background

Flores and his codefendants jointly utilized nine peremptory challenges during jury selection and Flores's request for additional peremptory challenges was denied. Throughout jury selection, the trial court and the parties emphasized the jurors must judge the guilt of each defendant on an individual basis. After the jury was selected, Flores's counsel, on behalf of all defendants, argued the trial court should have granted the defense "for cause" challenge to Juror 58, the defense used their last peremptory challenge to remove Juror 58, and the defense would have used that peremptory challenge to remove Juror 60 had the court granted the motion to excuse Juror 58 "for cause." Flores's counsel, however, also contended "there were multiple jurors left that we would have used that preemptory challenge for." No one challenged Juror 60 "for cause" due to lack of impartiality. (ECF Nos. 11 at 255–56; 113-5 at 6–11.)

After opening statements, the trial court granted the motion to sever codefendants Martinez and Rodriguez because, although the codefendants were aware Flores would make certain concessions, they were unaware Flores's counsel would include them in those concessions by conceding they conspired with Flores to rob Bestor. The trial court further noted, "statements of counsel are not evidence" but expressed concern the jury might believe that, based on the statements of Flores's counsel, Flores provided incriminating information to his counsel about the codefendants, and such a belief could have a spillover effect on the jury's findings for the codefendants. The trial court admonished the jury not to speculate why the codefendants no longer participated in the trial. During Bestor's direct examination, Flores moved for mistrial claiming he was prejudiced by the absence of the codefendants because he was required to share peremptory challenges with them during jury selection, and their absence might lead the jury to believe the State dismissed the case against them, gave them a deal, or they were no longer responsible for the crimes. The trial court denied the motion but gave the defense an opportunity to submit an additional cautionary instruction to be given at the close of evidence. Flores declined to propose such an instruction. The jurors were instructed not to return a verdict as to the guilt of any person

1    other than Flores even if they believed one or more persons were also guilty. (ECF Nos. 11, 12-1

2    at 39–40; 13-4 at 12; 14-5 at 8; 113-5; 113-6 at 31–39, 43.)

3                    **2.    Additional Legal Principles**

4        "[P]eremptory challenges are not constitutionally protected fundamental rights; rather, they

5    are but one state-created means to the constitutional end of an impartial jury and a fair trial."

6    *Georgia v. McCollum*, 505 U.S. 42, 57 (1992); *see also United States v. Martinez-Salazar*, 528

7    U.S. 304, 311 (2000) ("[U]nlike the right to an impartial jury guaranteed by the Sixth Amendment,

8    [p]eremptory challenges are not of federal constitutional dimension."); *Stilson v. United States,*

9    250 U.S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires

10    the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial

11    jury is all that is secured."). Absent a specific constitutional violation, federal habeas review may

12    be permitted where a state procedure is fundamentally unfair. *See, e.g., Donnelly v. DeChristoforo,*

13    416 U.S. 637, 643 (1974). However, an unfair state procedure does not warrant habeas relief

14    unless, in light of the entire record, it "had substantial and injurious effect or influence in

15    determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 637–38 (1993) (citing

16    *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).

17                    **3.    Supreme Court of Nevada's Determinations**

18        The Supreme Court of Nevada determined Flores failed to demonstrate he was prejudiced

19    by the denial of the motion for mistrial following severance of the codefendants given the trial

20    court gave, and offered, a cautionary instruction to the jury and Flores failed to show he would

21    have challenged any particular venire member in a manner contrary to his codefendants:

22        Appellant Jesus Ignasio Flores contends that the district court committed
          reversible error when it denied his motion for a mistrial. Specifically, Flores argues
23        that he was denied his right to due process because he was forced to share
          peremptory challenges with codefendants who were pursuing conflicting defenses
24        and the sudden absence of his codefendants, after the district court granted their
          motion for severance following opening statements, interfered with the jury's
25        ability to be fair and impartial.

26        "The decision to deny a motion for a mistrial rests within the district court's
          discretion and will not be reversed on appeal absent a clear showing of abuse."
27        *Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) (internal quotations
          omitted). Here, Flores has not alleged that he would have challenged or selected
28        any particular member of the venire in a manner contrary to his codefendants. *See*

                                                    12

*U.S. v. Sandoval*, 847 F.2d 179, 184 (5th Cir. 1988) (allegations that codefendant exercised peremptory challenges in manner contrary to defendant's wishes are insufficient absent facts showing that impaneled jury was [other than] impartial). Furthermore, peremptory challenges arise from the exercise of a privilege granted by the legislature and this "'privilege must be taken with the limitations placed upon the manner of its exercise.'" *White v. State*, 83 Nev. 292, 297, 429 P.2d 55, 58 (1967) (quoting *Anderson v. State*, 81 Nev. 477, 480, 406 P.2d 532, 533 (1965)) (explaining that disagreement as to joint exercise of peremptory challenges does not invalidate NRS 175.015 (recodified as NRS 175.041)). Therefore, we find no prejudice arising from Flores'[s] exercise of peremptory challenges in concert with his codefendants.

In addition, the mere absence of codefendants at the trial table following opening statements is not grounds for a mistrial. *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004) ("A defendant is not entitled to a perfect trial, only a fair trial."). Here, the district court informed the jury that the codefendants would not be participating in the trial and admonished them not to speculate as to why. *See, e.g.*, *U.S. v. Daniele*, 886 F.2d 1046, 1055 (8th Cir. 1989) (affirming denial of mistrial where jury was admonished not to consider absence of codefendants). Furthermore, Flores declined the district court's offer to administer further limiting instructions pertaining to the absence of his codefendants. Accordingly, we find no error in the district court's denial of Flores'[s] motion for a mistrial.

(ECF No. 14-18.)

### 4.    Disposition of Ground I(A)

Flores failed to demonstrate the joint selection of the jurors was fundamentally unfair, that it resulted in a jury that was not fair and impartial, or that it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623, 637–38. Flores contends he was prejudiced because the codefendants' interests were "in complete conflict" with his interests; however, he failed to demonstrate the conflict affected the joint selection of jurors or any of the impaneled jurors were not fair and impartial. As the state supreme court reasonably found, Flores failed to identify any of his decisions about which venire persons to challenge were in conflict with the decisions of his codefendants. Flores's claim that he was prejudiced because, had he exercised his peremptory challenges alone, he would have challenged Juror 60, is speculative. Nothing demonstrates Flores would have retained a peremptory challenge to remove Juror 60 had he alone chosen the jury. The Supreme Court of Nevada's determination that Flores failed to demonstrate the joint exercise of his peremptory challenges deprived him of federal due process, and the right to an impartial jury and a fair trial, is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding. Flores is not entitled to federal habeas relief for Ground I(A).

### 5.    Disposition of Ground I(B)

Flores claims he was prejudiced by the denial of his motions for mistrial and trial continuance because the jury "invariably speculated" about the absence of the codefendants. (ECF No. 71 at 13.) The state supreme court, however, reasonably presumed the jury followed the trial court's instructions not to speculate about the absence of the codefendants. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). Nothing in the record suggests any of the jurors acted contrary to their instructions.[6] Moreover, the record demonstrates the trial court, the parties, and other instructions to the jury, emphasized the jury's task was to determine Flores's guilt on an individual basis. Flores claims he could have prepared a different defense had he received a trial continuance but specifies no alternative defense. Flores failed to establish the denial of the motion for mistrial or trial continuance, or the absence of the codefendants, was fundamentally unfair or had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637–38. The Supreme Court of Nevada's determination that the denial of the motion for mistrial and continuance did not deprive Flores due process, an impartial jury, or a fair trial, is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Flores is therefore not entitled to federal habeas relief for Ground I(B).

///

///

---

[6] Although Circuit precedent may not constitute clearly established Federal law for purposes of a petition brought under AEDPA, Circuit precedent may be persuasive in determining whether a state court reasonably applied Supreme Court authority. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted). Based on the Supreme Court's presumption that a jury follows instructions, the Ninth Circuit has held jury instructions are generally sufficient to eliminate any potential prejudice to remaining defendants that might arise from the mid-trial disappearance of a codefendant. *See, e.g.*, *United States v. Washabaugh*, 442 F.2d 1127, 1129 (9th Cir. 1971) (holding that informing the jury of a codefendant's guilty plea entered after most of the evidence was presented at a joint trial was not erroneous because the statement was unadorned and accurate, and the jury was instructed not to consider the plea in determining the guilt or innocence of the remaining defendants; and acknowledging, "given the close identification of the defendants with one another . . . and the lateness in the trial, it might have been better simply to tell the jury that [the codefendant who pleaded guilty ] was to be considered no longer a defendant in the case and that his guilt or innocence should play no part in future deliberations.").

**B.    Ground II—Effective Assistance of Trial Counsel**

Ground II alleges trial counsel provided ineffective assistance by (A) advising Flores to concede the charges of conspiracy to commit robbery, robbery, and burglary; (B) conceding coconspirator Martinez possessed and used a firearm and knife; (C) failing to ensure Flores understood the rights he waived by conceding guilt; and (D) failing to timely move for mistrial after opening remarks caused severance of the codefendants' trials. Ground II(F) alleges the cumulative effect of trial counsels' errors prejudiced Flores at trial. (ECF No. 71 at 14–40.)

**1.    Legal Standards for Effective Assistance of Counsel**

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). A petitioner claiming ineffective assistance of counsel ("IAC") must demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy either question, the Court need not consider the other. *Id.* at 697.

In considering an IAC claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. On the performance prong, the issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his or her perspective at the time. *Id.* at 689–90. A petitioner making an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* In considering such claims, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* To establish prejudice, it is not enough "to show that the errors had

some conceivable effect on the outcome of the proceeding." *Id.* at 693. The errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## 2. Ground II(A)—Advice to Concede Charges at Trial

Ground II(A) alleges trial counsel were ineffective in advising Flores to concede guilt for burglary, robbery, and conspiracy to commit robbery. (ECF No. 71 at 14–24.) The Supreme Court of Nevada determined Flores established neither deficient performance nor prejudice:

> Appellant argues that the district court erred in denying his claims of ineffective assistance of counsel raised in his December 6, 2012, petition. To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984); *Warden v. Lyons,* 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland,* 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State,* 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

> [A]ppellant argues that his trial counsel were ineffective for conceding appellant's guilt to three of the charged crimes, for failing to properly explain a concession strategy to appellant, and for failing to ensure that the district court properly canvassed appellant regarding the concession strategy. Appellant also argues that a concession strategy was not proper because it caused the trial court to sever appellant's case from the codefendants, which appellant argues harmed his ability to assert that the codefendants had greater responsibility for the crimes. Appellant fails to demonstrate either deficiency or prejudice for this claim. Counsel informed the trial court that they had discussed the concession strategy with appellant, that he agreed to it, and that they believed it was the best course given the substantial amount of evidence against appellant for those charges. The trial court canvassed appellant regarding this strategy and appellant stated that he had discussed it with counsel and he agreed with the concession strategy. Tactical decisions such as this one "are virtually unchallengeable absent extraordinary circumstances," *Ford v. State,* 105 Nev. 850, 853, 784 P.2d 951, 953 (1989), which appellant does not demonstrate. *See Armenta-Carpio v. State,* 129 Nev. ___, ___, 306 P.3d 395, 398 (2013) (stating "[a] concession of guilt is simply a trial strategy —no different than any other strategy the defense might employ at trial"). There was overwhelming evidence of appellant's guilt produced at trial, given that appellant was discovered shortly after the 911 call wearing the victim's jacket and in possession of the victim's property, the victim identified appellant and specifically recalled appellant's tattoos, appellant's DNA was recovered from the crime scene, and appellant was recorded attempting to conduct transactions at ATMs using the victim's debit card. As there was overwhelming evidence of appellant's guilt for all of the crimes charged, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel not pursued a concession strategy, explained the strategy further to appellant, or requested that

1   the district court provide further explanation to appellant. Therefore, the district
    court did not err in denying this claim.

2   (ECF No. 15-9 at 2–4.)

3                    **a.    Review is deferential under AEDPA.**

4        Flores claims this Court must apply de novo review to the Supreme Court of Nevada's

5   analysis for Ground II(A), claiming trial counsel entirely failed to subject the prosecution's case

6   to meaningful adversarial testing. (ECF Nos. 71 at 14–24; 110 at 16.)

7        The Supreme Court has held *Strickland's* prejudice standard does not apply, and prejudice

8   is instead presumed, where "counsel entirely fails to subject the prosecution's case to meaningful

9   adversarial testing." *Bell v. Cone*, 535 U.S. 685, 696–98 (2002) (holding the presumption-of-

10  prejudice rule of *U.S. v. Cronic,* 466 U.S. 648, 659 (1984), applies only where counsel's deficient

11  failure to oppose the prosecution goes to the proceeding as a whole and that *Strickland's* prejudice

12  standard applies where counsel's failure occurs only at specific points in the trial). For example,

13  the Ninth Circuit Court of Appeals has applied *Cronic's* presumptive prejudice standard where

14  defense counsel argued the evidence against the defendant for a single charge was overwhelming

15  and counsel stated he would not try to raise a reasonable doubt whether the defendant perpetrated

16  the crime or whether the requisite elements were proved. *United States v. Swanson,* 943 F.2d 1070,

17  1071, 1074–76 (9th Cir. 1991) (recognizing that "in some cases a trial attorney may find it

18  advantageous to his client's interests to concede certain elements of an offense or his guilt of one

19  of several charges," but holding defense counsel's concession that no reasonable doubt existed

20  regarding the only factual issues in dispute constituted a deprivation of the right to due process

21  and effective assistance of counsel that was prejudicial per se.).[7] In contrast, the Ninth Circuit

22  Court of Appeals applied *Strickland's* prejudice standard, rather than *Cronic's* per se prejudice

23  standard, where a concession strategy focused on enhancing defense credibility for the charges on

24  which defendant had a chance and which carried the stiffest penalties in the face of overwhelming

25

26  ---

    [7] The United States Supreme Court has relatedly held trial counsel's concession of guilt is not the functional
27  equivalent of a guilty plea where a defendant maintains trial rights, including the requirement that the prosecution
    prove the elements of the offense beyond a reasonable doubt by competent, admissible evidence; the ability to cross-
    examine witnesses; exclude prejudicial evidence; and appeal evidentiary or instructional errors. *Nixon v. Florida*, 543
28  U.S. 175, 188–89 (2004).

evidence of guilt. *See United States v. Thomas*, 417 F.3d 1053, 1056–59 (9th Cir. 2005).

The state court record shows Flores's counsel conceded guilt for robbery, burglary, and conspiracy to commit robbery (and the enhancements because the victim was 60 years of age or older) because counsel believed they were indefensible. Counsel explained the concession strategy was aimed at obtaining credibility and persuading the jury the State failed to prove first-degree kidnapping, which carried a potential life sentence,[8] and support arguments Flores was not responsible for the battery or the weapon enhancements.[9] Counsel argued for acquittal of Flores for first-degree kidnapping and battery with use of a deadly weapon, and argued the State failed to prove Flores had requisite intent and knowledge for possession of the firearm, and for use of the firearm and knife or that the use of the knife to batter Bestor was reasonably foreseeable. Counsel vigorously cross-examined Bestor concerning discrepancies between Bestor's trial testimony that Flores directly possessed the firearm and knife, Bestor's earlier statements and testimony that Flores did not directly possess either of those weapons, and Bestor's failures to mention Martinez and Flores exchanged weapons during the offenses. Counsel's concessions and advocacy at trial did not amount to an entire failure to subject the State's case to meaningful adversarial testing or concede the proceeding as whole. The Supreme Court of Nevada reasonably applied *Strickland's* prejudice standard, rather than *Cronic's* per se prejudice standard, to Flores's claim that counsel were ineffective in advising and pursuing the concession strategy.

### b.    Disposition of Ground II(A)

The Supreme Court of Nevada's application of *Strickland's* prejudice standard to Flores's claim that trial counsel were ineffective in advising and pursuing the concession strategy because, but for counsel's pursuit of the strategy, there is no reasonable probability the result of the proceeding would have been different, is objectively reasonable.

---

[8] *See* NRS § 200.320.

[9] Trial counsel's explanation for the strategy and statements, read in the context of the entire record, supports a strong inference that another objective of the concession strategy was to gain credibility at sentencing for the conceded charges, and for any convictions the jury might deliver on the remaining charges, as counsel emphasized at sentencing Flores's acceptance of responsibility at trial, and explained Flores received untenable and unacceptable offers during plea negotiations. *See supra*, pp. 8–9.

Flores was charged with burglary with the intent to commit robbery. At the relevant time, a person was guilty of robbery if he took "personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property . . ." NRS § 200.380, *as enacted by* Laws 1995, p. 1187. A taking is by force or fear "if force or fear" was used to obtain or retain possession of the property. *Id.* A person is guilty of burglary if they unlawfully enter any house, room, or vehicle with the intent to commit any felony. NRS § 205.060(1), *as enacted by* Laws 2005, c. 126, § 1, eff. May 19, 2005. "Conspiracy is an agreement between two or more persons for an unlawful purpose." *Thomas v. State,* 114 Nev. 1127, 1143, 967 P.2d 1111, 1122 (1998) (citations omitted). "Conspiracy is seldom susceptible of direct proof and is usually established by inference from the conduct of the parties." *Id.* (internal quotation marks omitted). Evidence of "a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement" for a conspiracy conviction. *Id.* (internal quotation marks omitted).

The Supreme Court of Nevada reasonably determined the trial record contains overwhelming evidence that Flores and his codefendants engaged in a coordinated series of acts in furtherance of an intention to rob Bestor, that they robbed Bestor by means of force or fear, and they burglarized his home. *See supra*, pp. 2–4. The trial evidence established Flores was found wearing Bestor's jacket and in possession of Bestor's fake El Rancho money shortly after the offenses, and Bestor's driver's license was lying on the ground near Flores, Martinez, and Rodriguez when police stopped them. Bestor identified all three men, whom he spent considerable time with that night, as the perpetrators, and recognized Flores's tattoos. Rodriguez had Bestor's shopping cards and Martinez had a knife. Bestor's computer was moved from Flores's residence to Rodriguez's residence, and Rodriguez's father gave Bestor's computer to the police. Flores's DNA was on Bestor's necktie consistent with his putting it into his mouth. Bank surveillance videos and Flores's sweatshirt tied him to attempts to access Bestor's accounts using Bestor's ATM cards and PINs that night. Although police found no firearm, they did not search the residences of Flores, Martinez, or Rodriguez, and Bestor testified Martinez pointed a firearm at him while he and Flores demanded money, and while Flores attempted to access Bestor's money

using the ATM cards and PINS.[10] Flores claims trial counsel's concessions were prejudicial because counsel should have foreseen they would cause severance of the codefendants, thereby preventing Flores from comparing his actions to those of his codefendants. (ECF No. 110 at 17.) The jury was, however, aware of the codefendants' participation, and Flores's counsel argued differences between Flores's actions and those of the codefendants. Moreover, regardless of the absence or presence of the codefendants, the jury could reasonably infer from the trial evidence that Flores was more culpable as the leader, e.g., Martinez and Rodriguez watched Bestor while Flores sought cash from the ATMs; Flores drove the four of men in Bestor's vehicle; and Flores tied Bestor to the chair and gagged and blindfolded him while Martinez held the knife.

The Supreme Court of Nevada's application of *Strickland's* prejudice prong, and determination there is no reasonable probability the result of the proceedings would have been different without counsel's concessions to robbery, burglary, and conspiracy to commit robbery, is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Flores is not entitled to federal habeas relief for Ground II(A).

### 3.    Ground II(B)—Concession Martinez Possessed a Firearm and Knife

Ground II(B) alleges trial counsel performed ineffectively by stating in opening remarks that Martinez possessed the firearm and the knife and conceding Flores was guilty of conspiracy to commit robbery, because the remarks conceded the weapon enhancements for robbery, burglary, battery, and first-degree kidnapping, which Flores did not expressly concede. Flores further claims the concession that Martinez had a firearm was prejudicial because the evidence that a gun was present was weak, e.g., no firearm was recovered, and Bestor's description of the gun was vague. Flores claims counsel conceded facts that prevented him from challenging the weapon

---

[10] Flores argues in his reply brief in support of the Petition that Flores was prejudiced because the codefendants received more favorable sentences than Flores. This contention, and the exhibits submitted to support it, was not presented to the state courts or in the petition. (ECF Nos. 15-6; 71, 110 at 19.) The Court declines to consider this claim as it was raised for the first time in the counseled reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

enhancements and battery charge, rendered him vicariously liable for the conduct of his coconspirators, and conceded all of the charges. (ECF Nos. 71 at 23–31; 110 at 21.) For the following reasons, Flores is not entitled to federal habeas relief for Ground II(B)

### a.    Supreme Court of Nevada's Determination

The Supreme Court of Nevada determined Flores did not establish prejudice under *Strickland* as there was overwhelming evidence at trial that Flores personally possessed the weapons and knew about the use of the weapons during the offenses:

> [A]ppellant argues that counsel were ineffective for improperly conceding that appellant was criminally liable for use of a firearm and a knife because counsel informed the jury in the opening statement that appellant's codefendants had used a firearm and a knife. Appellant fails to demonstrate either deficiency or prejudice for this claim. Counsel did not concede that appellant was criminally liable for the use of those two weapons. Counsel's statements, when placed in context, suggested to the jury that while the evidence would establish that the codefendants used those weapons, the State would not produce evidence proving that appellant knew of the use of those weapons. Counsel then argued in closing that the State had failed to meet its burden to demonstrate that appellant knew that the codefendants used weapons in the course of the crimes. Appellant fails to demonstrate a reasonable probability of a different outcome had counsel made different statements or arguments with respect to the use of these weapons because there was overwhelming evidence of guilt produced at trial that appellant knew of the use of these weapons and that he possessed these weapons during the course of the crimes. Therefore, the district court did not err in denying this claim.

(ECF No. 15-9 at 4–5.) The Supreme Court of Nevada's application of *Strickland's* prejudice prong is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### b.    Burglary While in Possession of a Firearm

Flores claims the concession Flores conspired with Martinez to rob Bestor and that Martinez had a firearm, prejudiced him because Flores was vicariously liable for the actions of his coconspirators under Nevada law. (ECF No. 110 at 11–12.) The state supreme court's finding is reasonable because the trial evidence supports the inference Flores personally gained possession of a firearm during the offenses.

As relevant here, an enhanced sentence was applicable for "a person convicted of burglary who has in his or her possession or gains possession of any firearm . . . at any time during the

commission of the crime, at any time before leaving the structure or upon leaving the structure . . . .." NRS § 205.060(4), *as enacted by* Laws 2005, c. 126, § 1, eff. May 19, 2005. Bestor testified Martinez pointed a firearm at him, and he later saw Martinez give the firearm to Flores during the course of the burglary. That same night, Bestor told Detective Smith that Martinez may have handed the firearm to someone else. By the time of trial, Bestor testified he recalled Martinez handed the firearm to Flores during the commission of the burglary. Because Bestor testified Flores "gained possession" of a firearm during the offense, the State need not have relied upon a conspiracy theory for the conviction of burglary while in possession of a firearm. Thus, the Supreme Court of Nevada reasonably concluded there is no reasonable probability the result of the proceedings would have been different had Flores's trial counsel not conceded the conspiracy charge and not stated in opening remarks that Martinez possessed a firearm during the burglary.

### c.    Robbery and Kidnapping with Use of a Deadly Weapon

Flores was convicted of enhancements for use of a deadly weapon, i.e., the knife or firearm, during a first-degree kidnapping and the robbery. An unarmed offender "uses" a deadly weapon and "is subject to a sentence enhancement when the unarmed offender is liable as a principal for the offense that is sought to be enhanced, another principal to the offense is armed with and uses a deadly weapon in the commission of the offense, and the unarmed offender had knowledge of the use of the deadly weapon." *Brooks v. State,* 124 Nev. 203, 210, 180 P.3d 657, 661 (2008).

The record demonstrates the evidence at trial supported reasonable inferences that Flores "had knowledge of the use of the deadly weapons" by Martinez to effectuate the robbery and kidnapping. According to Bestor's testimony, Flores and Martinez engaged in "a coordinated series of acts" in furtherance of their intention to rob Bestor and burglarize his home, sufficient to infer the existence of an agreement and finding that they engaged in a conspiracy. Martinez held the firearm on Bestor in Flores's presence while they each demanded money and Flores took Bestor's cash and debit cards. Martinez later handed the firearm to Flores, and Flores handed a knife to Martinez. Martinez held the open knife while directing Bestor to the vehicle, stabbed Bestor with the knife, and held the knife while Flores tied Bestor to a chair. Thus, even if counsel had not conceded conspiracy to rob Bestor and that Martinez used the firearm and knife during the

offenses, there is no reasonable probability the result of the proceedings would have been different, i.e., no reasonable probability the jury would have determined Flores did not know Martinez used the firearm and/or knife during the commission of the robbery and first-degree kidnapping offenses.[11] The Supreme Court of Nevada's determination that there is no reasonable probability the result of the proceeding would have been different, but for the concessions, was objectively reasonable.[12]

### d.    Battery with use of a Deadly Weapon

The Supreme Court of Nevada reasonably determined that, but for the concessions, there is no reasonable probability the result of the proceeding would have been different for the charge of battery with use of a deadly weapon.

At the time of the offenses, "battery" meant "any willful and unlawful use of force or violence upon the person of another." NRS § 200.481, *as enacted by* Laws 2005, c. 64, § 3, eff. Oct. 1, 2005. Battery is a general intent crime. *Byars v. State*, 130 Nev. 848, 863, 336 P.3d 939, 949 (2014). To convict a defendant of a general intent crime under the theory of vicarious coconspirator liability, the State is only required to prove that the crime in question was a

---

[11] In his reply brief in support of the Petition, Flores claims, had trial counsel not conceded facts supporting the kidnapping charge, he could have contested kidnapping by contending the kidnapping was incidental to the robbery. (ECF No. 110 at 17.) The record, however, demonstrates trial counsel argued the State could not prove the kidnapping charge because, *inter alia*, it was incidental to the robbery. (ECF No. 13-3 at 51–56.)

[12] Respondents contend Flores was not prejudiced by counsels' concessions concerning the deadly weapon enhancements for first-degree kidnapping, robbery, and battery, because Flores conceded the alleged enhancement due to the victim being 60 years of age or older. (ECF No. 108 at 18.) In Nevada, a sentencing court may not impose consecutive enhancement penalties under the statute providing for an additional penalty for use of deadly weapon and for providing additional penalty when the victim is 60 years of age or older for the same offense. *Carter v. State*, 1982, 647 P.2d 374, 98 Nev. 331. *See* NRS § 193.169(1), *as amended by* Laws 2007, c. 525, § 19, eff. July 1, 2007. If victim is 60 years of age or older, in addition to the term of imprisonment prescribed by statute for robbery, battery, and kidnapping, a defendant may be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 20 years. NRS § 193.167(1), *as amended by* Laws 2007, c. 525, § 15, eff. July 1, 2007. "[A] person who uses a firearm or other deadly weapon . . . in the commission of a crime shall, in addition to the term of imprisonment prescribed by statute for the crime, be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 20 years." NRS § 193.165(1). Thus, although the state supreme court did not rule on this basis, it appears that, even if counsel's concessions led to Flores's convictions for the deadly weapon enhancements for the first-degree kidnapping, robbery, and battery, the indisputable concession the victim was 60 years of age or older means there is no reasonable probability the result of the proceedings would have been different had counsel not conceded facts supporting the weapon enhancements.

"'reasonably foreseeable consequence'" of the object of the conspiracy. *Nelson v. State*, 123 Nev. 534, 549, 170 P.3d 517, 527 (2007).

Again, there was overwhelming evidence that Flores and Martinez engaged in conspiracy to rob Bestor. The trial evidence overwhelmingly supports the inference that Flores could "reasonably foresee" Martin using the knife to batter Bestor as a consequence of the objectives of that conspiracy. During the offenses, Flores took a knife to Bestor's home and gave it to Martinez. Martinez pointed that knife at Bestor to attain Bestor's entry into the vehicle so they could take Bestor to an ATM, have Bestor withdraw cash, and then rob Bestor of the money. The visit to the ATM did not produce the desired results for Flores and Martinez, and Martinez stabbed Bestor and told him they were "serious." Martinez later held the knife while Flores tied, gagged, and blindfolded Bestor. The Supreme Court of Nevada reasonably concluded there is no reasonable probability that, but for the concessions, the result of the proceeding would have been different for the charge of battery with use of a deadly weapon, as the evidence supported an inference that Flores could reasonably foresee Martinez would batter Bestor with the knife as a consequence of the objective of the conspiracy.[13]

### e.    First-Degree Kidnapping

Flores claims trial counsel' performances were prejudicial because counsel conceded during opening remarks that Flores was involved in three acts of kidnapping: (1) Flores took the victim's ATM card and left the house while codefendants Martinez and Rodriguez stayed behind "threatening Gregory," (2) Flores drove the victim to the ATM while codefendant Martinez had "a knife pointed at Gregory" in the car; and (3) Flores tied up the victim before leaving the house. Flores claims counsels' factual concessions satisfied every element of kidnapping with a deadly weapon and that Flores did not consent to this. (ECF No. 110 at 13.) *See supra* at pp. 6–7.

---

[13] Flores contends in his reply brief that, but for trial counsel's concession to the conspiracy charge and that Martinez stabbed the victim, Flores could have argued he was not responsible because he did not have intent or know Bestor was stabbed. (ECF No. 110 at 17.) Flores fails to establish there was a reasonable probability the result of the proceedings would have been different. The trial record shows trial counsel argued there was no evidence Flores intended that Martinez batter Bestor with the knife or that Flores knew Bestor was stabbed. (ECF No. 13-3 at 46–48.)

In Nevada, a conviction for first-degree kidnapping requires that a "person ... willfully seizes, confines, ... conceals, kidnaps or carries away a person by any means whatsoever ... for the purpose of committing ... robbery upon or from the person." NRS § 200.310(1). As relevant to trial counsels' argument in Flores's case, a conviction for robbery requires "the unlawful taking of personal property from the person of another ... against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property." NRS § 200.380. Dual convictions for robbery and kidnapping are permitted based upon the same conduct. *Mendoza v. State*, 122 Nev. 267, 274–75, 130 P.3d 176, 180 (2006). However, in such instances:

> [T]o sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion.

*Id.* at 275, 130 P.3d at 181. "In general, '[w]hether the movement of the victim is incidental to the associated offense and whether the risk of harm is substantially increased thereby are questions of fact to be determined by the trier of fact in all but the clearest cases.'" *Stewart v. State*, 133 Nev. 142, 145, 393 P.3d 685, 687–88 (2017) (citations omitted).

The Supreme Court of Nevada found "[a]s there was overwhelming evidence of appellant's guilt for all of the crimes charged, appellate fails to demonstrate a reasonable probability of a different outcome at trial had counsel not pursued a concession strategy . . ." (ECF No. 15-9 at 4.) *See, e.g., Johnson v. Williams*, 568 U.S. 289, 298 (2013) (confirming that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The Supreme Court of Nevada's application of *Strickland's* prejudice prong to this claim is objectively reasonable. The trial record reveals overwhelming evidence that Flores committed a first-degree kidnapping. Bestor testified Flores took his ATM cards and left the house while codefendants Martinez and Rodriguez confined Bestor to his bedroom, during which Martinez pointed the gun at Bestor and Rodriguez threatened to hit Bestor with a hammer. Bestor testified

Flores, Martinez, and Rodriguez later escorted him to his vehicle at knifepoint and "made" him sit in the backseat with Martinez, who held the knife, and Flores drove them to an ATM for the purpose of stealing Bestor's money. Bestor testified that Flores gave Martinez the knife, and Martinez stabbed or poked Bestor with the knife when the ATM did not produce the desired result. Finally, Bestor testified that, against his wishes, all four men returned to Bestor's bedroom, where Flores tied him to a chair and gagged and blind-folded him, and then the men stole Bestor's property from his home. Although trial counsel conceded Flores committed a robbery, and conceded facts supporting the kidnapping charge, counsel argued the jury could not convict Flores of kidnapping because the additional requisite circumstances were not proved to afford dual convictions for robbery and kidnapping. The jury, however, rendered a guilty verdict for kidnapping and robbery. The Supreme Court of Nevada's determination that, but for trial counsels' factual concessions concerning the facts supporting kidnapping, there is no reasonable probability the result of the proceedings would have been different, is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the state court proceeding.

### 4.    Ground II(C)—Failure to Ensure Flores Understood Rights Waived

Ground II(C) alleges trial counsel were ineffective in failing to ensure Flores understood the rights he waived when he conceded guilt for robbery, burglary, and conspiracy to commit robbery. Flores claims his waiver was predicated on trial counsels' advice the concession would allow him to blame the codefendants for the remaining charges; he did not understand that it could cause severance of the codefendants' cases; did not understand he was at risk for a weapons enhancement because Bestor could claim Flores had a weapon; and counsel failed to ensure the trial court's canvas included an acknowledgement and waiver of the facts that counsel intended to concede. (ECF No. 71 at 32–35.)

Neither of Flores's trial attorneys testified at the state postconviction evidentiary hearing, however, Flores testified his counsel explained the concession strategy to him and he understood he would be found guilty of crimes for which he actually participated. He said counsel told him he had a good chance of beating the first-degree kidnapping charge because he "wasn't the one that

moved him from one place to the other, to the chair or whatever." He said he and his attorney did not talk about the movement of the vehicle. Flores said one of his codefendants put Bestor in the car and tied him up and one of them stabbed Bestor, but Flores denied doing those things. Flores said because what he did was different, he believed he would be acquitted of kidnapping and the deadly weapon enhancements. Flores, however, testified his attorney explained to him that conspiracy meant "[a]s long as I was there, I was just as guilty for the other crime." He said his attorneys told him they planned to concede the codefendant had a deadly weapon and he would be found guilty of his codefendant's possession of a deadly weapon because he conspired in the crime. Flores said the presence of his codefendants at trial was important because they were involved in the crimes. (ECF Nos. 14-8; 14-18; 14-43 at 3–13; 15-9.)

The Supreme Court of Nevada reasonably concluded Flores failed to demonstrate prejudice under *Strickland*. *See supra*, pp. 16–17. The trial court confirmed Flores understood the strategy meant he gave up some of his constitutional rights, and Flores understood the State would be relieved of its burden of proof for the charges that counsel conceded. Flores claims the trial court failed to advise him that he had the right to challenge the State's evidence; however, Flores was aware of that right as he understood the concessions waived his right to hold the State to its burden of proof for the conceded charges, and counsel challenged the State's evidence for the remaining charges.[14] Even if trial counsel did not ensure Flores understood and waived his right to contest each fact that trial counsel conceded, and had explained there was a chance Bestor might testify Flores personally possessed the firearm during the offenses, Flores presents no basis to conclude there is a reasonable probability the result of the proceeding would have been different as the State presented overwhelming evidence to support the charges against Flores.[15]

---

[14] In his reply brief in support of the Petition, Flores contends counsel were ineffective in failing to ensure Flores understood he waived his right to challenge the State's evidence for the conceded charges, waived the right to testify on his own behalf for those conceded charges, and waived the right to compulsory process to call witnesses for the conceded charges. (ECF No. 110 at 26.) Flores did not raise these particular claims in the state court proceedings. (ECF No. 15-6 at 56–59.) The Court will not consider them here. *See supra*, pp. 17–18, 20 fn.7, 10.

[15] Flores does not claim he would have accepted a guilty plea agreement in lieu of the concession strategy had he been advised of the facts trial counsel intended to concede at trial. *See supra*, p.18 n.9.

Flores contends he was prejudiced because he was unaware the concessions would lead to the severance of the co-defendants, whom he expected to blame for the contested crimes. Nothing prevented Flores from placing the blame for the contested crimes on the codefendants at his trial, and the jury was aware of the existence of the codefendants and instructed to assess Flores's guilt on an individual basis. Flores testified at the postconviction evidentiary hearing he believed it was important that the codefendants participate in the trial because they were involved in the offenses, but he pointed to no evidence he was unable to present due to their absence at trial, that would have supported a finding that there is a reasonable probability the result of the proceedings would have been different. The Supreme Court of Nevada's determination that there is no reasonable probability that but for the failure to further explain or request the state district court further canvass Flores concerning the concession strategy, the result of the proceeding would have been different, is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the state court proceeding. Flores is not entitled to federal habeas corpus relief for Ground II(C).

### 5.    Ground II(D)—Untimely Motions for Mistrial or Trial Continuance

Ground II(D) alleges trial counsel were ineffective in failing to remedy the concessions and severance by making a timely motion for mistrial or trial continuance. Flores claims the concessions strategy was dependent upon the presence of the codefendants at trial and counsel should have moved for mistrial or continuance to develop a new strategy. (ECF No. 71 at 36–37.)

As discussed, the Supreme Court of Nevada on direct appeal determined the trial court did not err when it rejected Flores's motion for mistrial or trial continuance upon severance of the codefendants. *See supra*, pp. 12–13. In the postconviction review proceeding, the Supreme Court of Nevada determined Flores did not demonstrate counsels' performances in failing to earlier request mistrial or trial continuance due to the severance of the codefendants was deficient or prejudicial under *Strickland*:

> [A]ppellant argues that counsel were ineffective for failing to move for a mistrial right after the trial court granted the codefendants' motion for severance. Counsel moved for a mistrial based upon the severance issue, but did so at a later

point in the trial. Appellant argues that the delay in moving for a mistrial was improper. Appellant fails to demonstrate either deficiency or prejudice for this claim. This court concluded on direct appeal that appellant was not entitled to a mistrial based upon the severance of the codefendants' cases, *Flores v. State,* Docket No. 56940 (Order of Affirmance, September 14, 2011), and appellant fails to demonstrate a reasonable probability of a different outcome had counsel moved for a mistrial earlier in the trial. Therefore, the district court did not err in denying this claim.

(ECF No. 15-9 at 4.)

The Supreme Court of Nevada reasonably applied *Strickland's* prejudice standard. Flores contends he was prejudiced by the failure to request a mistrial or a trial continuance immediately after the severance of the codefendants because the trial court would have been inclined to grant the motion and counsel could have prepared a new defense. He claims the failure to make the motions before Bestor testified, was prejudicial. Speculation is insufficient to show prejudice supporting an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 693. Moreover, the record demonstrates the trial court proceeded with Flores's trial finding Flores was not prejudiced by the absence of the codefendants. Flores fails to establish a reasonable probability that the result of the proceedings would have been different based on a different defense. The Supreme Court of Nevada's determination there is no reasonable probability the result of the proceedings would have been different had counsel earlier requested a mistrial or trial continuance is neither contrary to, nor constitutes an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Flores is not entitled to federal habeas corpus relief for Ground II(D).

### 6.    Ground II(F)—Cumulative Trial Counsel Error

Ground II(F) alleges trial counsel committed multiple unreasonable and prejudicial errors that individually and collectively deprived Flores of his right to effective assistance of counsel. (ECF No. 71 at 40.)

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302–03 (1973) (holding the rights to due process and a fair trial were violated because of the

imposition of a combination of state hearsay and party witness voucher rules that deprived defendant the ability to either cross-examine an individual who had confessed repeatedly to the murder in question or to call witnesses to discredit the repudiation of the confession)). "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Id.* (citing *Chambers*, 410 U.S. at 290 n.3). If the evidence of guilt is overwhelming, the errors are considered harmless, and the conviction will generally be affirmed; if the verdict is weakly supported by the record, it is more likely to have been affected by errors than one with overwhelming record support. *Id*. at 928 (citations and quotation marks omitted).

The Supreme Court of Nevada determined Flores failed to demonstrate cumulative error because his ineffective assistance of counsel claims lack merit:

> [A]ppellant argues that the cumulative effect of ineffective assistance of counsel warrants vacating his judgment of conviction. Because appellant's ineffective-assistance claims lack merit, he fails to demonstrate any cumulative error. Therefore, the district court did not err in denying this claim. The State argues that this court should not consider this claim because it was not raised before the district court. However, a review of appellant's petition and supplement reveal that this claim was raised below.

(ECF No. 15-9 at 5.) The Supreme Court of Nevada's rejection of this claim is neither contrary to nor constitutes an unreasonable application of clearly established Federal law, as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in the state court record. As discussed, the Supreme Court of Nevada reasonably concluded Flores's IAC claims lack merit, and the evidence of guilt was overwhelming. Accordingly, the Supreme Court of Nevada reasonably concluded there was no cumulative error that denied Flores a fundamentally fair trial. Flores is not entitled to relief for Ground II(F).

## V.    Certificate of Appealability

This is a final order adverse to Flores. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court therefore has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the

denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, the Court finds a certificate of appealability is warranted for Grounds II(A), II(B), II(C), and II(F), of the Petition. Reasonable jurists could find debatable or wrong this Court's assessments of the Supreme Court of Nevada's determinations whether Flores received ineffective assistance of trial counsel based on the concession strategy and failure to canvass Flores concerning the facts counsel would concede. *See Slack*, 529 U.S. at 484.

**VI.    Conclusion**

**IT IS THEREFORE ORDERED:**

1. The Petition (ECF No. 71) is DENIED.

2. A Certificate of Appealability is DENIED for Grounds I, and II(D). A Certificate of Appealability is GRANTED for Grounds II(A), II(B), II(C), and II(F).

3. All requests for an evidentiary hearing are DENIED.

4. Respondents' unopposed motion for extension of time to file an Answer to the Fourth Amended Petition for Writ of Habeas Corpus (ECF No. 107) is granted nunc pro tunc and the Answer (ECF No. 108) is deemed timely filed.

5. The Clerk is directed to substitute W.A. Gittere for Respondent Brian E. Williams, Sr.

6. The Clerk is directed to enter a final judgment in favor of Respondents and against Flores dismissing this action with prejudice and close this case.

DATED: June 30, 2023

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE